IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:12CR170–HEH |
| ) | |
| MICHAEL F. HARRIS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION
(Denying Defendant's Motion for New Trial)

This matter is before the Court on Defendant's Motion for New Trial (ECF No. 87), filed on May 29, 2013. Both parties have filed detailed memoranda supporting their respective positions. For the reasons stated below, the Motion will be denied.

### I. BACKGROUND

Michael F. Harris ("Harris") was the President and majority shareholder of M.F. Harris Research, Inc. ("MFH"). He purportedly formed MFH to develop a treatment for HIV/AIDS—using hyperbaric chambers to inhibit the virus. Over a six-year period, ending in July 2011, Harris made repeated misrepresentations to induce potential investors to purchase MFH stock. He claimed that the funds would be used to develop patents and to conduct research but in fact diverted most of the funds to his own use.

On March 4, 2013, a jury convicted Harris of two counts of securities fraud, in violation of 15 U.S.C. § 77q(a); three counts of wire fraud, in violation of 18 U.S.C. § 1343; and one count of mail fraud, in violation of 18 U.S.C. § 1341. Each of these counts stemmed from the fraudulent scheme outlined above.

At the close of the Government's case, Harris moved for a judgment of acquittal on the securities fraud violations in Counts Three and Four on the ground that the Government failed to prove venue in the Eastern District of Virginia.[1] The Court declined to rule on the Motion at the time, and Harris renewed the Motion after the trial. After allowing the Government a chance to respond and conducting its own research, the Court granted the Motion on April 26, 2013 and overturned the securities fraud convictions.

Harris now seeks a new trial pursuant to Federal Rule of Criminal Procedure 33 "to avert a severe miscarriage of justice by prejudicial spillover and retroactive misjoinder." (Def.'s Mot. New Trial 1.) Had Counts Three and Four not been before the jury, he argues, much of the evidence introduced in support these charges would have been excluded by Federal Rules of Evidence 403 and 404(b). Harris contends that the jury's consideration of this evidence substantially prejudiced the proceedings against him. The Government counters that the evidence presented at trial would still have been admissible on the remaining counts and that the presentation of this contested evidence "had no effect on the jury's verdict in light of the strength of the evidence surrounding Counts Five through Eight and [the] Court's clear instruction for the jury to consider each count separately during its deliberations." (Resp. to Def.'s Mot. New Trial 4.) The Court finds that the retroactive misjoinder of Counts Three and Four did not substantially prejudice the proceedings against Harris, as the Government presented overwhelming

---

[1] Count Three concerned the fraudulent sale of securities to Katie Ritter in December 2008. Count Four addressed the fraudulent sale of securities to Russell Carrier in February 2009.

evidence of his guilt on Counts Five through Eight, and the disputed evidence would have been otherwise admissible on those counts.

## II. DISCUSSION

Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). According to the Fourth Circuit, "a district court should exercise its discretion to grant a new trial sparingly, and . . . should do so only when the evidence weighs heavily against the verdict . . . , or when substantial prejudice has occurred . . . ." *United States v. Brooks*, 189 Fed. Appx. 284, 286 (4th Cir. 2006) (internal quotation marks omitted) (citing *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003); *United States v. Jones*, 542 F.2d 186, 211 (4th Cir. 1976)). This is not such a case.

Harris argues that the "reversal of one conviction requires the reversal of all other counts where there is [a] prejudicial 'spillover' effect from the evidence on the invalid count, or retroactive misjoinder." (Def.'s Mot. New Trial 3 (citing *United States v. Riley*, 621 F.3d 312, 324–25 (3d Cir. 2010); *United States v. Vebeliunas*, 76 F.3d 1283, 1293– 94 (2d Cir. 1996)).) He contends that the evidence introduced to prove Counts Three and Four would be inadmissible in a trial solely on the remaining counts and that the presentation of this evidence substantially prejudiced the verdict with respect to Counts Five through Eight. Thus, Harris concludes, the Court must set aside his convictions on those counts and award a new trial.

Harris's analysis is unpersuasive. First, even if the evidence pertaining to Counts Three and Four would have been inadmissible, its inclusion did not prejudice the verdict

3

with respect to Counts Five through Eight. Second, the Court's instructions to the jury mitigated the risk of prejudice from the retroactive misjoinder of Counts Three and Four. Third, the evidence concerning Counts Three and Four would still have been admissible to prove the surviving counts. Thus, the Court will deny the Motion for New Trial.[2]

Central to the analysis is whether the misjoinder of Counts Three and Four substantially prejudiced the proceedings or constituted harmless error. Harris suggests that the closeness of the case should be a cardinal factor in the Court's determination of whether the error was harmless. Citing *United States v. Ince*, 21 F.3d 576, 582–83 (4th Cir. 1994), Harris posits that because this was a close case, and the evidence on Counts Three and Four should have been excluded, the Court is compelled to set aside his convictions and award a new trial. Harris's assumption adds little marrow to a skeletal argument.

To begin, the analytic framework deployed in *Ince* is not the proper tool for determining whether a misjoinder error is harmless. In *Ince*, the Fourth Circuit considered whether it was reversible error for the district court to admit the defendant's alleged confession in order to impeach the credibility of a Government witness. 21 F.3d at 579. The Government argued that any error resulting from the admission was harmless under Federal Rule of Criminal Procedure 52(a). The Fourth Circuit instructed:

---

[2] This Court will also deny Harris's Motion because it is untimely. Fed. R. Crim. P. 33(b)(2) states that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Harris was arguably entitled to an extension to file his Rule 33 motion within 14 days of the Court's order dismissing Counts Three and Four because his argument hinged on the post-trial dismissal of those counts. The Court dismissed those counts on April 26, 2013, and Harris did not file his motion until May 29, 2013—33 days after the order on which he bases the motion. Furthermore, he has not sought leave to file the untimely motion.

4

> In assessing whether it is 'highly probable' that the error did not 'affect' or 'substantially sway' a judgment of conviction, we must consider three factors: (1) the centrality of the issue affected by the error; (2) the steps taken to mitigate the effects of the error; and (3) the closeness of the case.

*Id.* at 583. However, in the context of misjoinder, the Fourth Circuit has advised:

> In assessing whether a misjoinder error results in such actual prejudice, [district courts are to consider] (1) whether the evidence of guilt was overwhelming and the concomitant effect of any improperly admitted evidence on the jury's verdict; (2) the steps taken to mitigate the effects of the error; and (3) the extent to which the improperly admitted evidence as to the misjoined counts would have been admissible at trial on the other counts.

*United States v. Mackins*, 315 F.3d 399, 414 (4th Cir. 2003) (citation omitted).

Accordingly, *Mackins* supplies the proper analytic framework for the instant case.

Next, in applying *Mackins*, the Court concludes that any misjoinder error did not result in actual prejudice. First, the evidence of guilt on Counts Five through Eight was overwhelming and the concomitant effect of any improperly admitted evidence was negligible. Count Five charged Harris with wire fraud—specifically, alleging that Harris sent post-sale emails to John Marosi ("Marosi") claiming that shares purchased by his deceased brother, Tom Marosi, were nontransferable. The Government introduced compelling evidence in support of this charge. Marcelo Bellato testified as to the false representations Harris made to induce Tom Marosi's investment in MFH. Cindy Williamson, a financial analyst with the National White Collar Crime Center, explained in detail how Harris used Marosi's $200,000 for his personal expenses, including $85,000 towards the purchase of his personal residence. Marosi also testified that Harris refused to provide requested documents and that he misled Marosi about the transferability of the

5

shares. Finally, the Government introduced testimony from Steve Weiner, a Certified Public Accountant, and Rosalie Baker, an investor and bookkeeper, showing that Harris misused investor funds, including Tom Marosi's investment.

Count Six alleged that Harris engaged in wire fraud by emailing David Evans ("Evans") wire transfer instructions for Evans to purchase MFH stock. Evans testified that Harris misrepresented how his investment would be used. Evans also indicated that he did in fact execute the transfer and make the investment in 2008. As well, the Government introduced extensive financial analysis showing that Harris spent all of Evans's investment within a week of receiving the funds and that he used the money primarily for his own expenses.

The final wire fraud charge in Count Seven concerned Diane Desch's ("Desch") wire transfer of $7,500 to Harris in June 2011. During her testimony, Desch spoke at length about the misrepresentations Harris made in soliciting her investment. In June 2011, she twice transferred money to Harris. Financial analysis showed that roughly $2,000 of the first $2,500 transfer covered patent expenses, with Harris using the remaining $500 for his personal expenses. That same analysis revealed that much of the second transfer of $7,500 was also used to defray personal debt.

Count Eight charged Harris with mail fraud. According to the Government, Harris sent investor Nicole Gentry ("Gentry") an invitation to a shareholders' meeting in November 2010. The Government contended that Harris conducted this meeting to lull Gentry and other investors into believing that their funds were being used for legitimate business purposes. At trial, the Government showed that after viewing Harris's

PowerPoint presentation, Gentry invested $5,000 around October 2005. Financial records demonstrated that of the $140,000 raised at the time Gentry invested, only $8,300 was dedicated to patent expenses. Contrary to Harris's presentation, no money was used for research. Rather, he spent the bulk of the funds on his own expenses. Gentry testified that she received the invitation to the shareholders' meeting by mail. She and several other investors testified that Harris made several other false representations during the meeting about how investor funds were being used. The Government also introduced a recording of the meeting made by another shareholder that corroborated Gentry's testimony. Therefore, there was overwhelming evidence supporting each of the surviving Counts, and none were close calls.

Second, the Court's instructions to the jury mitigated the effects of any potential prejudice arising from the misjoinder of Counts Three and Four. The Court clearly instructed the jury that they were to consider each count separately and that their verdict with respect to one count should not control their verdict as to any other count. As the Government notes, the Fourth Circuit has concluded that such an instruction "substantially mitigate[s] . . . any possible spillover of prejudicial evidence." *United States v. Blair*, 661 F.3d 755, 770 (4th Cir. 2011) (internal quotation marks omitted) (citing *Mackins*, 315 F.3d at 415). Thus, the Court took reasonable steps to mitigate any adverse effect.[3]

---

[3] Harris first noted his objection to venue on Counts Three and Four at the close of the prosecution's case. At that time, the Court and the Government were served with a lengthy supporting memorandum. To enable the Government to respond, the Court took the matter under advisement.

Third, the evidence presented on Counts Three and Four would have been admissible even if those charges had not been included in the indictment. However, before explaining why the evidence would still have been admitted, it is necessary to briefly review Katie Ritter ("Ritter") and Russell Carrier's ("Carrier") testimony and how it supported the Government's theory of the case. Harris's fraud spanned nearly six years from October 2005 to June 2011. Over the life of the scheme, Harris employed the same method to fraudulently sell investments in MFH—showing a PowerPoint presentation rich in prevarication about himself, the company, and the research. Ritter and Carrier both testified that Harris used the PowerPoint presentation to induce them to invest in MFH. Each also offered their recollection of how Harris claimed he was using the invested funds. Thus, this evidence directly supported the Government's theory that Harris executed a fraudulent scheme to sell bogus investments for nearly six years. As well, this evidence directly refuted his defense that he did not intend to defraud any investors and that he always acted with the best interests of the company in mind.

Harris maintains that the evidence supporting Counts Three and Four would not have been admissible had those counts been dismissed prior to trial. He first argues that Ritter and Carrier's testimony was cumulative and irrelevant. Given the duration and scope of the fraud, this evidence helped the jury understand how Harris executed the scheme and gave them an appreciation of the extensive efforts he undertook to further the fraud. Furthermore, their testimony bore directly on his criminal intent, which he placed at issue by pleading not guilty to the charged offenses. *See United States v. McLamb*, 985 F.2d 1284, 1289 (4th Cir.1993). The evidence was therefore relevant and probative.

8

Alternatively, Harris asserts that the probative value of this evidence was substantially outweighed by the risk of unfair prejudice and that the testimony should have been excluded under Federal Rule of Evidence 403. While the Court appreciates Harris's concern, this testimony was significant, as it allowed the jury to fully understand the scope and nature of the scheme to defraud. Moreover, the risk of unfair prejudice was mitigated by this Court's instructions to the jury. As discussed above, the Court clearly instructed the jury that they were to consider each count separately. The Court also explained to them that they should not determine the facts of the case by simply weighing the number of witnesses testifying for or against Harris but were to consider all testimony in evidence to determine which witnesses they believed. Thus, the probative value of the disputed testimony outweighed the risk of unfair prejudice.

Lastly, Harris claims that Rule 404(b) barred admission of this testimony because it only pertained to acts extrinsic to the charges in Counts Five through Eight. However, the details supplied by Ritter and Carrier constituted intrinsic evidence not subject to exclusion by Rule 404(b). *See United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996) ("Rule 404(b) applies only to limits on the admission of other acts extrinsic to the one charged."). Under *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 1996) (quoting *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994)), "[e]vidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct 'arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'" As noted above, the conduct underpinning Counts Three and Four was necessary to complete the

story of the offenses charged in Counts Five through Eight. This conduct was "inextricably intertwined" with the conduct in Counts Five through Eight for which he remains convicted. *Chin*, 83 F.3d at 88. In short, the acts on which Counts Three and Four were based were intrinsic to the fraudulent scheme underlying the surviving counts. The evidence supporting the dismissed counts thus related directly to the scheme to defraud at issue in the surviving convictions—showing how Harris executed the scheme and shedding light on his intent to defraud. Accordingly, this evidence was both relevant and admissible.

In the immediate case, the three factors identified in *Mackins* strongly weigh against granting a new trial. The Government introduced overwhelming evidence of Harris's guilt on Counts Five through Eight. In instructing the jury to consider each count separately, the Court mitigated the effects of the retroactive misjoinder. Furthermore, as discussed at length above, any improperly admitted evidence as to the misjoined counts would have been admissible to prove the other charges. Therefore, the misjoinder was harmless.

### III. CONCLUSION

For the reasons stated above, Harris's Motion for a New Trial will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: June 24, 2012
Richmond, Virginia

10